**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOM BODETT and BODETT & COMPANY, INC., <br><br>                           Plaintiffs, <br><br>            v. <br><br> G6 HOSPITALITY LLC; G6 HOSPITALITY IP LLC; and MOTEL 6 OPERATING L.P., ACCOR ECONOMY LODGING, <br><br>                           Defendants. | <u>**COMPLAINT**</u> |

Plaintiffs Tom Bodett ("Mr. Bodett") and Bodett & Company, Inc. ("Bodett & Co.," and together with Mr. Bodett, "Plaintiffs"), by and through their attorneys Loeb & Loeb LLP, hereby bring this action against Defendants G6 Hospitality LLC ("G6"), G6 Hospitality IP LLC ("G6 IP"), and Motel 6 Operating L.P., Accor Economy Lodging ("Motel 6 L.P.," and together with G6 and G6 IP, "Motel 6"), and alleges as follows:

<u>**INTRODUCTION**</u>

1.      Mr. Bodett is an award-winning writer, radio personality, voice actor, and woodworker. For almost four decades, he has been the lead spokesman for Motel 6, the largest franchisor in the U.S. economy lodging market.

2.      Mr. Bodett's voice work on behalf of Motel 6 has had a profound impact on the company's brand. He coined the brand's tagline, "We'll leave the light on for you," and his radio and television advertisements on behalf of Motel 6 have been referred to as some of the best advertisements ever made. Indeed, Motel 6 acknowledges on its website that Mr. Bodett's advertising campaign on behalf of the brand was from the beginning an "instant success," helped

"turn[] the chain into a household name," and has since "won more advertising awards than any other brand in the lodging industry."

3.      Mr. Bodett's working relationship was governed by a series of agreements entered into between Bodett & Co., Mr. Bodett's loan-out entity, and various Motel 6 subsidiary entities. The most recent of those agreements was an amendment, dated August 5, 2020 (the "Third Amendment"), which extended Mr. Bodett's contractual relationship with Motel 6 through to November 5, 2025, in exchange for guaranteed annual payments by Motel 6 to Mr. Bodett on January 7 of each contract year.

4.      For the past four decades, Mr. Bodett and Motel 6 had an excellent working relationship, even as Motel 6's ownership twice changed hands.  Motel 6's top executives treated Mr. Bodett with the warmth and respect shown to any team member.  Mr. Bodett forged lasting relationships throughout the executive staff, marketing, sales, and operations departments as well as among the franchisees and property managers, and made a habit of introducing himself when his travels found him at one of their locations.

5.      However, things took a turn following Motel 6's sale in December 2024 to OYO, a New Delhi-based hospitality technology company.  Per the Third Amendment, Motel 6 was required to make its final guaranteed contract payment to Mr. Bodett on January 7, 2025.  But less than one month after the completion of OYO's acquisition, Motel 6 missed that payment deadline, and to this date has failed to make any further payment whatsoever to Mr. Bodett.

6.      Moreover, once Mr. Bodett was forced to terminate his agreement with Motel 6 due to Motel 6's wholly unjustified breach, Motel 6 continued to make use of Mr. Bodett's name and voice, all without Mr. Bodett's consent.

7.       Mr. Bodett has spent the past five months trying to devise a resolution that would allow Mr. Bodett and Motel 6 to part ways amicably and avoid bringing undue negative publicity

to Motel 6 and its franchisees, while also appropriately recognizing the critical role Mr. Bodett has played in Motel 6's success over the past four decades. Unfortunately, Motel 6—through its new owners—has only responded with misrepresentations, obfuscations, and delay tactics.

8.      Mr. Bodett is now left with no choice but to vindicate his rights through the courts. He seeks damages for Motel 6's breach of contract and unauthorized use of his persona, together with attorney's fees.

## PARTIES AND RELEVANT PERSONS

9.      Plaintiff Tom Bodett is a citizen of Vermont.

10.     Plaintiff Bodett & Company, Inc. is an Alaska corporation with its principal place of business in Vermont.

11.     Upon information and belief, Defendant G6 Hospitality LLC is a Delaware limited liability company with its principal place of business in Texas.

12.     Upon information and belief, Defendant G6 Hospitality IP LLC is a Delaware limited liability company with its principal place of business in Texas.

13.     Upon information and belief, Defendant Motel 6 Operating L.P., Accor Economy Lodging is a Delaware limited partnership with its principal place of business in Texas.

14.     Upon information and belief, G6, G6 IP, and/or Motel 6 L.P., either together or through one or more of their parents or subsidiaries, has nearly 1,500 locations across the United States and Canada, including at least 13 locations in New York.

15.     Non-party Arcieri & Associates ("Arcieri") serves as Plaintiffs' agent in their dealings with Motel 6, and is a citizen of New York, New York.

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction under both 28 U.S.C § 1331 and 28 U.S.C. § 1332. Mr. Bodett's Lanham Act claim arises under federal law, and Plaintiffs'

3

state-law claims fall within the Court's diversity jurisdiction because there is complete diversity of citizenship between Plaintiffs and Motel 6 and the amount in controversy exceeds $75,000.

17.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## STATEMENT OF FACTS

### I.    Mr. Bodett and His Work on Behalf of Motel 6

18.    Mr. Bodett is an American icon. He is the author of numerous books; he has hosted and contributed to a variety of commercial radio programs and to National Public Radio; he has lent his voice to a number of animated series as well as *Saturday Night Live*, *National Geographic Explorer*, and several of Ken Burns's documentaries; and most significantly for this litigation, Mr. Bodett has since 1986 been the lead spokesman for the Motel 6 brand.

19.    Mr. Bodett's long-running advertising campaign on behalf of Motel 6—centered around his ad-libbed tagline, "We'll leave the light on for you"—has been integral to the brand's success over the past four decades.  Through radio and television commercials aired across the nation, Mr. Bodett's name and voice,  unpretentious demeanor, and personal integrity have become synonymous with the brand.

20.    Mr. Bodett's advertising campaign has also received consistent plaudits in the advertising industry.  For example: Advertising Age magazine named the campaign as one of its Top 100 ad campaigns of the past century back in 1999; Mr. Bodett and the other creators of the campaign were inducted into the Clio Advertising Hall of Fame in 2013; the campaign was awarded the 2002 Hermes Award for Best Advertising Campaign and the 2002 Silver GALAXY Award; and the campaign has earned the top prize at the Radio Mercury Awards multiple times,

including as recently as 2017.  In total, the campaign has garnered over 150 awards over the past

39 years.

21.    Motel 6 itself has acknowledged the importance of Mr. Bodett's advertising work

on behalf of the brand.  Motel 6's website features the following blurb:

> The brand's advertising campaign, featuring on-air personality Tom Bodett,
> began in 1986 and proved an instant success for Motel 6, turning the chain
> into a household name and winning industry awards. The campaign has won
> more advertising awards than any other brand in the lodging industry, which
> is understandable, given that Motel 6 has the highest advertising recognition
> factor in the economy lodging category. Ask most people about Motel 6,
> and they will say, "That's the place where they leave the light on for you."[1]

## II.    The Relevant Agreements

22.    Mr. Bodett's relationship with Motel 6 has been governed by a series of agreements

over the course of the past four decades.  However, only three agreements are relevant to this

lawsuit.

23.    *First*, Mr. Bodett—through his loan-out entity, Bodett & Co.—entered into a

May 10, 2007 agreement (the "2007 Agreement") with Motel 6 L.P., pursuant to which

Bodett & Co. agreed to provide Motel 6 L.P. with Mr. Bodett's services through

November 5, 2010.

24.    The 2007 Agreement—which was governed by New York law—provided that, in

exchange for payment, Bodett & Co. would make Mr. Bodett available for the recording of radio

commercials, the recording of television commercials, photograph sessions, and other activities.

25.    Per the 2007 Agreement, payments to Bodett & Co. were to be directed to Arcieri's

offices in New York City.

---

[1] https://www.motel6.com/en/home/policies/about.html#corp.

26.     The 2007 Agreement further provided that, in the event of Motel 6's material breach, Bodett & Co. had the right to terminate the Agreement following a 48-hour cure period.

27.     The 2007 Agreement made clear that Motel 6 L.P.'s right to make use of materials produced pursuant to the 2007 Agreement was limited to the term of the Agreement, and also that Mr. Bodett had "the right to strict approval over any … use of his likeness, photograph, voice, name and/or biography."

28.     *Second*, Bodett & Co. entered into the Third Amendment with G6 IP.  The Third Amendment followed on a first amendment dated August 27, 2009, and a second amendment dated September 14, 2015.  Beyond extending the term of the 2007 Agreement through the period of November 6, 2020, to November 5, 2025, and setting annual payments of $1.2 million for January 7 of each year, the Third Amendment did not modify any of the relevant provisions of the 2007 Agreement.  The Third Agreement and the 2007 Agreement are collectively referred to herein as the "Agreements."

29.     *Third*, pursuant to a 2024 assignment agreement (the "Assignment Agreement") and as part of OYO's purchase of Motel 6, Motel 6 L.P. assigned all its rights, title, and interest under the Agreements to G6.

## III.    Motel 6 Breaches the Agreements, Refuses to Remedy the Situation, and Continues to Use Mr. Bodett's Name and Voice Without Consent

30.     As mentioned above, Mr. Bodett and Motel 6 have shared a warm, collaborative, and mutually beneficial relationship throughout the past 39 years.  The parties never had any disputes; Mr. Bodett always fulfilled his contractual obligations to Motel 6, and Mr. Bodett had good relations with Motel 6's top executives even as the company's ownership changed hands over the years.

31.     Unfortunately, that positive relationship swiftly came to an end in the beginning of 2025, following OYO's acquisition of Motel 6.

32.     Per the terms of the Third Amendment, Motel 6 was required to make its final guaranteed payment to Plaintiffs on January 7, 2025. However, when that day arrived, it became clear that Motel 6's new owners had no intention of making the required payment to Plaintiffs.

33.     Motel 6's new owners made a number of excuses for their failure to make the required payment. First, they blamed the delay on the ownership transition and the need to work "through bank transfers." Then, they claimed with no proof whatsoever that Plaintiffs had not performed their obligations under the Agreements, and threatened to sue Plaintiffs for non-performance if Mr. Bodett would not agree to simply let Motel 6's breach lie.

34.     Given Motel 6's obstinate refusal to honor its contractual commitments, Plaintiffs were left with no choice but to terminate the Agreements effective January 10, 2025. Plaintiffs' agent made clear to Motel 6 that as a result of the termination, Motel 6 "no longer ha[d] any rights to use any of the material produced during the term of the agreement."

35.     Despite Motel 6's dismissive and unlawful treatment of Mr. Bodett, he did not immediately run to the courts. Instead, Mr. Bodett endeavored over the course of the next five months to negotiate a confidential settlement that would fairly compensate him, provide graceful closure for all parties to a long and fruitful partnership, and leave Motel 6's public image—an image that Mr. Bodett cherishes and has been largely responsible for creating—unsullied.

36.     Unfortunately, Mr. Bodett's attempts at negotiation were unsuccessful. Despite Mr. Bodett's many efforts at outreach, he was invariably met with either delay tactics, insignificant lowball offers, or silence.

37.     To add insult to injury, Motel 6 also continued to make use of Mr. Bodett's persona following the Agreements' termination. Specifically, Motel 6 continued to use Mr. Bodett's name

and voice on the Motel 6 national reservation phone line for at least four months following the Agreements' termination. Needless to say, Mr. Bodett did not consent to such continuing use of his name or voice. Discovery will show whether Motel 6 continued to use Mr. Bodett's name, voice, or likeness in any other manner following the Agreements' termination.

38.    Plaintiffs now demand the damages they are owed as a result of Motel 6's egregious conduct.

## COUNT I: BREACH OF CONTRACT
### (On Behalf of Bodett & Co.)

39.    Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

40.    Bodett & Co. and Motel 6 are parties to the Agreements.

41.    Pursuant to the Agreements, Motel 6 was required to pay Bodett & Co. $1.2 million on January 7, 2025.

42.    Bodett & Co. performed its obligations under the Agreements.

43.    Motel 6 did not make the required payment to Bodett & Co. on January 7, 2025, materially breaching the Agreements.

44.    Following Motel 6's breach on January 7, 2025, it had 48 hours to cure its breach.

45.    Motel 6 did not cure its breach within that 48-hour period, leading to Bodett & Co.'s termination of the Agreements.

46.    As a result of Motel 6's breach of the Agreements, Bodett & Co. is entitled to damages equaling $1,200,000, plus pre-judgment interest.

47.    Moreover, Bodett & Co. is entitled to recover its attorney's fees for this action pursuant to the terms of the Agreements.

## COUNT II: SECTION 43(a) OF THE LANHAM ACT
### (On Behalf of Mr. Bodett)

48.     Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

49.     Mr. Bodett's name and voice have been used in commerce to promote brands such as Motel 6 for the past 39 years, and his name and voice are widely recognized by consumers.

50.     Following Plaintiffs' termination of the Agreements, Mr. Bodett no longer has any professional association with Motel 6 and no longer endorses or sponsors the brand.

51.     However, Motel 6's continuing use of Mr. Bodett's name and voice to promote its brand has created the false impression that Mr. Bodett still sponsors, endorses, or is associated in some manner with Motel 6.

52.     Motel 6's continuing use of Mr. Bodett's name and voice to promote its brand is likely to cause confusion, cause mistake, or deceive consumers as to whether Mr. Bodett still endorses, sponsors, or is associated with Motel 6.

53.     Upon information and belief, Motel 6's continuing use of Mr. Bodett's name and voice has been knowing, deliberate, and willful, with the intention to confuse or deceive consumers into believing that Mr. Bodett still endorses, sponsors, or is associated with Motel 6.

54.     Motel 6's willful unauthorized use of Mr. Bodett's name and voice to market its brand has harmed Mr. Bodett by using his name and voice without providing any compensation for said use, and by continuing to associate Mr. Bodett with a brand that he no longer supports.

55.     As a result of Motel 6's unauthorized use of Mr. Bodett's name and voice, and pursuant to 15 U.S.C. § 1117(a), Mr. Bodett is entitled to (1) Motel 6's profits, (2) damages in an amount to be proven at trial, (3) the costs of the action, and (4) reasonable attorney's fees.

## COUNT III: NEW YORK CIVIL RIGHTS LAW § 51
### (On Behalf of Mr. Bodett)

56.     Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

57.     Section 51 of the New York Civil Rights Law prohibits the use of any person's name, portrait, picture, likeness or voice in the State of New York for advertising purposes or for the purposes of trade without the written consent of that person.

58.     Following Plaintiffs' termination of the Agreements, Motel 6 no longer had Mr. Bodett's consent to use his name or voice in connection with advertising its services.

59.     Nevertheless, Motel 6 continued to use Mr. Bodett's name and voice to promote its services after January 10, 2025.  Such use occurred within the State of New York, as well as elsewhere.

60.     Motel 6 knew that it no longer had the right to use Mr. Bodett's name and voice following the termination of the Agreements, and yet it did so anyway.

61.     Motel 6's willful unauthorized use of Mr. Bodett's name and voice has harmed Mr. Bodett by using his name and voice without providing any compensation for said use, and by continuing to associate Mr. Bodett with a brand that he no longer supports.

62.     As a result of Motel 6's willful unauthorized use of Mr. Bodett's name and voice, Mr. Bodett is entitled to damages in an amount to be proven at trial, and exemplary damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court grant judgment against Motel 6 as follows:

(a)     On Count I, an award of damages of no less than $1,200,000, plus pre-judgment interest and attorney's fees;

10

(b)     On Count II, an award consisting of disgorgement of Motel 6's profits, damages in an amount to be proven at trial, the costs of the action, and reasonable attorney's fees;

(c)     On Count III, an award of damages in an amount to be proven at trial, plus exemplary damages; and

(d)     A grant of such other and further relief in favor of Plaintiffs and against Motel 6 as the Court deems just and proper.

### **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand that all issues so triable shall be tried be jury.

Dated: New York, New York
       June 9, 2025

                    LOEB & LOEB LLP


                    By: */s/ Christian D. Carbone*
                        Christian D. Carbone
                        Edward J. Delman
                        345 Park Avenue
                        New York, NY 10154
                        Tel: (212) 407-4000
                        ccarbone@loeb.com
                        edelman@loeb.com

                        *Attorneys for Plaintiffs*
                        *Tom Bodett and Bodett & Company, Inc.*

                                        24104150

11